# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

ARNOLD CLAYTON,

        Petitioner,

vs.　　　　　　　　　　　　Case No.:　　3:16-cv-404-J-34MCR
　　　　　　　　　　　　　　　　　　　　3:13-cr-002-J-34MCR

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

This case is before the Court on Petitioner Arnold Clayton's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civ. Doc. 1; § 2255 Motion).[1] Clayton, who pled guilty to one count of distributing cocaine base, argues that he did so because he had ineffective assistance of counsel. Clayton also argues that counsel gave ineffective assistance by failing to object to an unreasonable sentence. The United States has responded (Civ. Doc. 5; Response), and Clayton has replied (Civ. Doc. 6; Reply). Thus, the matter is ripe for review.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255

---

[1]    Citations to the record in the underlying criminal case, United States v. Arnold Clayton, No. 3:13-cr-002-J-34MCR, will be denoted as "Crim. Doc. __." Citations to the record in the civil 28 U.S.C. § 2255 case, No. 3:16-cv-404-J-34MCR, will be denoted as "Civ. Doc. __."

[2]    Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before resolving a § 2255 motion.

motion is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Clayton's § 2255 Motion is due to be denied.

## I.    Background

On March 26, 2014, a grand jury sitting in the Middle District of Florida charged Clayton in a six-count Superseding Indictment. (Crim. Doc. 93; Superseding Indictment). Count One charged Clayton with conspiracy to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Id. at 1-2. Counts Two through Six charged Clayton with distributing cocaine and/or cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Id. at 2-4. Because Clayton had two prior felony drug convictions, the United States filed an information pursuant to 21 U.S.C. § 851 subjecting him to a mandatory sentence of life imprisonment as to Count One and a maximum sentence of 30 years in prison as to Counts Two through Six. (See Crim. Doc. 101; Information to Establish Prior Convictions Under 21 U.S.C. § 851).

On the morning that jury selection was scheduled to begin, Clayton pled guilty to Count Three pursuant to a written Plea Agreement. (Crim. Doc. 121; Plea Agreement). In exchange for Clayton's plea of guilty to Count Three, the United States agreed to dismiss the remaining counts, including Count One. Id. at 2. The United States also agreed to

---

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

recommend a two-level downward adjustment for acceptance of responsibility if Clayton qualified under U.S.S.G. § 3E1.1(a). Id. at 2-3. After conducting a change-of-plea colloquy, the Court found that Clayton had knowingly and voluntarily entered the guilty plea. (Crim. Doc. 133; Change of Plea Tr. at 39-40). As such, the Court adjudicated Clayton guilty of Count Three.

The Court later held a combined sentencing hearing and revocation of supervised release hearing.[4] (Crim. Doc. 154; Sentencing & Revocation Tr.). Clayton admitted to violating the terms of supervised release based on the same conduct to which he pled guilty. Id. at 2-12. With respect to the violation of the conditions of his supervised release, the Sentencing Guidelines called for a sentence of between 18 months and 24 months in prison. Id. at 12. With respect to the distribution of cocaine base, the Probation Office recommended that the Court find that Clayton qualified as a career offender under U.S.S.G. § 4B1.1. Presentence Investigation Report (PSR) at ¶ 33. Clayton did not dispute the career offender classification, which drove the Sentencing Guidelines calculation regarding the distribution offense. See Sentencing & Revocation Tr. at 13-15.[5] After applying a two-level reduction for acceptance of responsibility, the Court determined that Clayton's total offense level was 32 and his Criminal History Category was VI, yielding an advisory sentencing range of 210-262 months in prison. Id. at 21-22. The Court sentenced Clayton to a term of 24 months in prison as to the violation of supervised release, followed

---

[4]    Clayton committed the instant offense while serving a term of supervised release for a previous drug conviction in United States vs. Arnold Clayton, No. 3:06-cr-141-J-33MCR (M.D. Fla.). As such, the Probation Office filed a petition to revoke Clayton's term of supervised release. See id., ECF No. 108.

[5]    Clayton objected to the drug quantities listed in the PSR, id. at 13-14, but as the United States observed, the career offender enhancement rendered the drug quantity a "nonissue," id. at 15.

by a consecutive term of 210 months in prison as to the distribution offense. Id. at 38-39. The Court also ordered Clayton to serve an additional 6-year term of supervised release following his release from prison. Id. at 39.

Clayton appealed his sentence to the United States Court of Appeals for the Eleventh Circuit. (Crim. Doc. 139; Notice of Appeal). Clayton's appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and moved to withdraw. Following an independent examination of the record, the Eleventh Circuit found there were no issues of merit and affirmed Clayton's conviction and sentence. United States v. Clayton, 598 F. App'x 890, 891 (11th Cir. 2015). Clayton did not petition the Supreme Court for a writ of certiorari. Clayton then timely filed the instant § 2255 Motion.

## II. Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To establish ineffective assistance of counsel, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984); Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show that, in light of all the circumstances, counsel's performance fell outside the "wide range of professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance was prejudicial, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

Strickland's two-part test applies to claims of ineffective assistance arising out of the plea negotiation process. Hill v. Lockhart, 474 U.S. 52, 57 (1985). Thus, a prisoner alleging ineffective assistance of counsel based on his attorney's performance during the plea process must show two things: (1) that his attorney's advice fell below an objective

standard of reasonableness, and (2) a reasonable probability that the outcome of the plea process would have been different with competent advice. Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (citation omitted).

## A. Ground One

Clayton's first claim is that he pled guilty because of the ineffective assistance of counsel. § 2255 Motion at 3-5. Specifically, Clayton alleges that he was coerced into pleading guilty because his counsel was not prepared to go to trial. According to Clayton, counsel visited him at the Bradford County Jail on the evening before the trial was set to begin, at which time counsel told Clayton he was not ready because he had not performed the necessary investigation and needed more time to contact witnesses. Clayton alleges that after their meeting, counsel changed the following day's court date to a change-of-plea hearing without consulting him. Clayton claims that he did not sign the Plea Agreement until he was forced to because counsel had abandoned his case.

Clayton also alleges that on the morning of the change-of-plea hearing, his attorney deceived him into believing that the prosecutor would drop the "§ 851 enhancement," referring to the increased penalties Clayton faced because of his prior felony drug convictions.[6] Id. at 4. According to Clayton, he had insisted he would not plead guilty unless the government dropped the enhancement. Thus, Clayton suggests that counsel falsely induced him to plead guilty.

---

[6] Because Clayton had two prior convictions for a felony drug offense, the applicable penalty for Count One was increased from a range of 10 years-to-life to a mandatory sentence of life imprisonment. 21 U.S.C. § 841(b)(1)(A) (2012). Likewise, the maximum possible sentence for Counts Two through Six was increased from 20 years in prison to 30 years in prison. Id., § 841(b)(1)(C) (2012).

Finally, Clayton recites the rule that defense counsel must communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused. Id. at 4 ; see also Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). However, Clayton does not allege that the government offered a more favorable plea deal than the one he accepted, or that counsel failed to communicate such an offer.[7] Instead, Clayton appears to assert that counsel deceived him into believing that the government would withdraw the § 851 enhancement. He explains that if the prosecutor had dropped the § 851 enhancement, his maximum possible sentence would have been reduced from 30 years in prison to 20 years, that his Sentencing Guidelines range would have been lower, and that his term of supervised release would have been 3 years instead of 6 years. Id. at 5. Thus, what Clayton actually seems to allege is that he was misled into pleading guilty with the § 851 enhancement still in place.

Ground One fails because the record refutes Clayton's allegations. To the extent Clayton argues he was coerced into pleading guilty because counsel was unprepared for trial, the Court held a lengthy discussion with Clayton and his counsel about this very topic. Plea Tr. at 25-32. That conversation ended with Clayton stating he was satisfied with counsel's investigation. Id. at 31-32. The transcript reflects the following dialogue:

> THE COURT: All right. Mr. -- well, actually, Mr. Clayton, Mr. Mairs has been representing you since about December. Are you satisfied with Mr. Mairs, with his representation?
>
> DEFENDANT: Yes, ma'am.

---

[7] Nor does the record support any suggestion that the government would have dropped the § 851 enhancement (in addition to agreeing to dismiss the remaining charges). The instant offense was Clayton's third federal conviction for distributing cocaine base. Thus, according to the government, it "was obligated to file a 21 U.S.C. § 851 information." Response at 8.

| | |
|---|---|
| THE COURT: | And are you satisfied that he investigated the matters relating to the government's witnesses that you wanted him to investigate? |
| DEFENDANT: | None of that happened, no, ma'am. But I'm satisfied. |
| THE COURT: | Mr. Clayton, are you satisfied that your lawyer has done everything that he needs to do to investigate your case and your defenses? |
| DEFENDANT: | He did the best he could with the time he had, yes, ma'am. |
| THE COURT: | Mr. Clayton, if you don't think that your lawyer investigated your case, you're going to have to tell me now. |
| | Your lawyer has had -- has had ample time, and I know that I appointed -- I authorized the expenditure of funds for private investigators and for experts, and so if you think there's something that your lawyer needed to do that he hasn't done, then I need to know that now. I'm not going to hear it later. |
| | So if you think your lawyer hasn't investigated your case, then I'm not going to accept a guilty plea at this time. |
| | I know that Mr. Mairs went to see you. I received a note or a petition to federal judge that indicated you hadn't been able to call out of Baker County for a period of time, so I personally called Mr. Mairs on Friday afternoon to make sure that you would be able to communicate with him. And I know that he was on his way up to see you on Friday. |
| | And he -- Mr. Mairs, did you see Mr. Clayton on Friday? |
| MR. MAIRS: | I did, Your Honor. And I actually spoke with him about our conversation. I also spoke with the sergeant with Mr. Clayton there about the phone procedure. And actually when I met with him yesterday, there was a follow-up with that same sergeant about how Mr. Clayton and other individuals can try and set up access. |

|                 |                                                                                                                                                                                                                                                                                                                                                                          |
|-----------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                 | There's still an issue, frankly, about whether those calls are going to be recorded, which I have a problem with. Unlike Duval apparently, that facility, at least that sergeant, was not familiar with whether or not the company that basically has a contract can engineer a nonrecorded alternative. Duval can, and I explained that to the sergeant. |
| THE COURT:      | My understanding from the marshal service is that it is nonrecorded. And I'll verify that. |
|                 | But I was really more concerned with whether you had been able to meet with Mr. Clayton over the weekend and discuss all these matters with him. |
| MR. MAIRS:      | I did.   And I shared with him both the investigative work that had been done as well as the expert services related to analyzing the DVDs. And I provided Mr. Clayton two reports from those experts. And, you know, we discussed the results of both the investigative work and the computer work. And obviously I also took to him a thousand pages of written material that were -- that was provided to me Thursday afternoon, had copied and gave him. |
| MR. TALBOT:     | Wednesday afternoon. |

***

|                 |                                                                                                                                                                                                                                                                                                                                                                          |
|-----------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| MR. MAIRS:      | Sorry. Right. It was -- five days was the agreement. So on the fifth day at about 4:30, I was provided it. I sent them out for copying and took them to Mr. Clayton on Friday and then went back yesterday. And, you know, I obviously am of the position that Mr. Clayton's decision to plead guilty is one that he understands. |
|                 | I know that there have been -- and, of course, we had a motion to continue hearing that dealt with the things he wanted me to investigate. And, frankly, I did -- I have an investigator employed. I do not feel like the continued effort to try and locate individuals who would potentially testify about uncharged crimes in the grand scheme of this case is at all significant. |
|                 | So based on the information Mr. Talbot provided about these testifying witnesses, I have plenty of information |

to confront them with about their background, their pending federal criminal cases. The ability to impeach them is significant.

So it's my position that trying to find individuals at this date to suggest they committed other crimes that Mr. Crews would have -- Agent Crews would have had to know about, confirm and decide not to prosecute is just not worthy of further pursuit. And I explained that to Mr. Clayton, and I believe he understands that.

The agreement before the Court as to the single count is clearly in his interest, because if he proceeds to trial and he's convicted of Count One, then he would be required to spend the rest of his life in the federal prison. And I believe he understands that and we talked in detail about that.

THE COURT: All right. Mr. Clayton, did you hear what your attorney just explained to me, sir?

DEFENDANT: Yes, ma'am. The only misunderstanding that I had was that I wasn't able to call him for 12 -- maybe 5 months. You never -- you can't call an attorney collect out there. Because you have to have Paytel in the system. Either noncollect or -- the mail system, he been trying to send me mail and I wasn't receiving it.

So he brought me this bulk of mail about three days ago and he hand deliver it to me. But I don't have a problem with pleaing [sic] out today. I'm going to plea out. And everything -- he good. Good counsel.

\*\*\*

THE COURT: And the material that you took to Mr. Clayton, Mr. Mairs, that was the -- I guess was that the Brady material that was turned over?

MR. MAIRS: Well, I had previously taken the other parts of the file.

THE COURT: All of the discovery.

MR. MAIRS: As the Court knows, I received the file from Mr. Rolle's office and I went through it. And I had shared with him – because he had a lot of paper, Mr. Clayton did already,

10

|               |                                                                                                                                                                      |
| ------------- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|               | at the facility. But I gave him copies of things he didn't have. But then, right, the most recent delivery was the Jenks [sic] Act material that the government gave me on Wednesday night. But it was fairly voluminous. And I went ahead and had it copied and brought it to him. |
| THE COURT:    | All right. And that was the material that the government agreed to disclose early to reciprocal disclosures; right? |
| MR. MAIRS:    | That's correct. |
| THE COURT:    | Which ordinarily the government would not have an obligation to give you before trial; right? |
| MR. MAIRS:    | Not until trial occurred, that's right. |
| THE COURT:    | All right. So, Mr. Clayton, going back to my question, Are you satisfied that your lawyer has done what he needed to do in order to represent you and to advise you of how to proceed in this case? |
| DEFENDANT:    | Yes, ma'am. |
| THE COURT:    | And do you understand what Mr. Maris explained about why he did not think it was significant or necessary to do further investigation about those uncharged crimes that you believe other government witnesses may have committed? |
| DEFENDANT:    | Yes ma'am. |
| THE COURT:    | And are you in agreement with that decision, sir? |
| DEFENDANT:    | Yes, ma'am. |
| THE COURT:    | All right. Then Mr. Clayton – and you reviewed the information that Mr. Mairs brought you on Friday night; you reviewed that stuff, sir? |
| DEFENDANT:    | There was a bunch of it. Yes, I went over it. I went over what I could. |
| THE COURT:    | Okay. And having discussed these matters with Mr. Mairs, and knowing – reviewed the investigative reports and the expert reports, you're satisfied that you can |

make a knowing decision of whether to enter a guilty plea at this time?

DEFENDANT: Yes, ma'am.

THE COURT: Is there anything else that you think we need to do before you do that, sir?

DEFENDANT: Other than try to get that phone straight out there to Bradford County. That's the only thing I know.

THE COURT: Okay. Well, does the phone issue in Bradford County, is that – does that – would that –

DEFENDANT: It don't affect the plea. It don't affect the plea. But it affect me if I want to talk to my lawyer, because I can't talk to him.

THE COURT: Well, I'm going to look into that. But is it – is there anything about that phone thing that affects your decision to enter a guilty plea at this time?

DEFENDANT: No, ma'am. No, ma'am.

THE COURT: Is there anything about that difficulty that prevented you from talking to Mr. Mairs enough to make a knowing and voluntary decision?

DEFENDANT: No.

THE COURT: So did you have ample opportunity to discuss this decision with Mr. Mairs?

DEFENDANT: Yes.

*** 

THE COURT: Oh, okay. All right. So, Mr. Clayton, having talked to me about these things this morning and having talked to Mr. Mairs – and I know you've been living with – this case was filed in January or – of 2013. At this time, sir, is it your intention to enter a plea of guilty to Count Three?

DEFENDANT: Yes, ma'am.

Plea Tr. at 25-32. Clayton later affirmed that he was pleading guilty because he was in fact guilty, that he did so knowingly and voluntarily, and that he had been neither coerced nor induced into doing so. Id. at 33, 36.

Contrary to Clayton's allegation that he was forced to plead guilty because counsel was unprepared for trial, the foregoing reflects that counsel retained experts and conducted a thorough investigation of Clayton's case. The record also reflects that counsel made a reasoned decision not to investigate certain witnesses, that counsel explained these matters to Clayton, and that Clayton was satisfied that counsel had adequately investigated his case. Clayton further told the Court, under oath, that nobody had coerced him to plead guilty. Thus, the record refutes Clayton's claim that he was forced to plead guilty because counsel had not conducted an adequate investigation.

Clayton also alleges that counsel deceived him into believing the government would drop the § 851 enhancement. The record refutes this claim as well. As part of the Plea Agreement, Clayton acknowledged that by pleading guilty to Count Three, he faced a maximum sentence of 30 years in prison, followed by a term of supervised release of at least 6 years – the enhanced penalties resulting from the § 851 enhancement. Plea Agreement at 1. During the change-of-plea colloquy, Clayton told the Court that he had read and understood every page and every word of the Plea Agreement, and that he had discussed the Plea Agreement with counsel. Plea Tr. at 15. Clayton also told the Court that he and his attorney had discussed the Sentencing Guidelines. Id. at 9. Clayton stated that he understood his sentence could be different or more severe than any estimate given by his attorney. Id. at 10-11. Clayton also said he understood that the Court could impose any sentence up to the statutory maximum. Id. at 10. The Court reminded Clayton that the

maximum sentence was 30 years in prison and that the minimum term of supervised release was 6 years, which Clayton affirmed he understood. Id. at 12-13. With full knowledge of his rights and the potential penalties, Clayton confirmed that he wished to plead guilty to Count Three. Id. at 32-33, 37-38.

Later at the sentencing hearing, while speaking in allocution, Clayton suggested that counsel had led him to believe the government would drop the § 851 enhancement. Nevertheless, Clayton acknowledged that he understood the maximum sentence was 30 years in prison. The exchange occurred as follows:

| | |
|---|---|
| DEFENDANT: | …. |
| | I never witnessed – I never had a conviction in the state. These are the only two charges that I have. And I – myself, I think it's greater than necessary to sentence me to this. And I thought they said they was dropping the 851 on me, the zero to 20 – back to zero to 20, to lessen the charge. That's what I – that's what I misunderstood by my attorney. |
| THE COURT: | I'm sorry, Mr. Clayton. I didn't understand that last thing that you just said. |
| DEFENDANT: | I misunderstood my attorney about zero to 30 with the 851. I thought the 851 would drop me back down to zero to 20. |
| THE COURT: | When did you misunderstand that, sir? |
| DEFENDANT: | Because I was – I was – we – he told me that it was going to be – the 851 was dropped. It would be a zero to 20, and – other than the zero to 30. |
| THE COURT: | Right. But when you pled guilty, you understood that it was up to 30 years? |
| DEFENDANT: | Yes, yes, yes. |
| THE COURT: | Right? |

DEFENDANT:         Yes, I understood that.

THE COURT:         Okay.

Sentencing & Revocation Tr. at 31-32. Clayton said nothing more about the § 851 enhancement after that exchange.

Between the written Plea Agreement, the change-of-plea colloquy, and the sentencing hearing, the record shows that Clayton pled guilty aware of the enhanced potential penalties and that he accepted those consequences. Thus, the record refutes Clayton's allegation that counsel led him to believe, or that Clayton pled guilty based on the impression that, the government agreed to drop the § 851 enhancement.[8]

"Solemn declarations in open court," such as the ones Clayton made when he pled guilty, "carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Id. at 73-74. Given that Clayton's statements at the change-of-plea colloquy were made under oath, "he bears a heavy burden to show his statements were false." United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) (per curiam). Based on the foregoing record, Clayton has not carried that heavy burden. As such, relief on Ground One is due to be denied.

---

[8]     The Court observes that Clayton's 210-month sentence on the distribution charge was below the 20-year maximum sentence that would have applied even if the government had dropped the § 851 enhancement. Moreover, as the Court remarked at the sentencing hearing, "[t]he plea agreement was extremely beneficial to Mr. Clayton because it relieved him of a mandatory life sentence" as to Count One. Sentencing & Revocation Tr. at 42. Thus, counsel did an effective job of negotiating a favorable plea deal for Clayton on the eve of trial.

**B. Ground Two**

Second, Clayton alleges that counsel gave ineffective assistance at the sentencing hearing because he failed to object to an unreasonable sentence. § 2255 Motion at 5-7. Clayton argues that his sentence was unreasonable because of the de minimis amount of drugs involved, his sincere remorse, and his acceptance of responsibility. Id. at 5. Clayton also complains that he received an improper "double penalty," but he does not explain that claim further. Id. Liberally construing his claim, the Court will assume that Clayton refers to the consecutive nature of his sentences for the distribution offense and the violation of supervised release.[9]

A "district court has wide discretion in selecting from a reasonable range of appropriate sentences." United States v. De La Cruz Suarez, 601 F.3d 1202, 1223 (11th Cir. 2010) (citation omitted). Still, "[a] sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008). A sentence is substantively unreasonable if it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." United States

---

[9] Clayton also repeats his claim that counsel deceived him into pleading guilty, and he vaguely asserts, without any elaboration, that "prosecutorial misconduct is a major factor in this case." Id. at 7. The Court has rejected Clayton's allegation that counsel deceived him into pleading guilty. Supra, Part II.A. As for Clayton's allegation of government misconduct, the claim is too vague and conclusory to warrant relief. See Lynn v. United States, 365 F.3d 1234, 1238-39 (11th Cir. 2004) (a conclusory allegation of government misconduct, unsupported by specifics, does not entitle a prisoner to § 2255 relief).

v. Rosales-Bruno, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal quotation marks omitted). But "[t]he weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Clay, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted). "[I]t is only the rare sentence that will be substantively unreasonable." Rosales-Bruno, 789 F.3d at 1256. Moreover, the party challenging the sentence bears the burden of proving that the sentence is unreasonable. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

With respect to the procedural reasonableness of the sentence, Clayton does not allege that the Court miscalculated the Guidelines range. Indeed, Clayton has conceded that he qualified as a career offender, which drove the offense level and the Criminal History Category for the distribution offense. Sentencing & Revocation Tr. at 14. Clayton also raised no objection to the Guidelines calculation regarding the supervised release violation. Id. at 12. The record shows no Booker[10] error either, as the Court recognized that the Sentencing Guidelines were advisory and treated them as such. See id. at 8, 41. Clayton does not specify any § 3553(a) factors that the Court failed to consider, nor does he allege that the Court based the sentence on any clearly erroneous facts. Finally, Clayton does not allege that the Court failed to adequately explain its chosen sentence. Thus, Clayton has not established that his sentence was procedurally unreasonable or that counsel was ineffective for not objecting to the sentence as such.

With respect to the substantive reasonableness of the sentence, the Eleventh Circuit considered and rejected a substantive reasonableness argument on direct appeal. In the Anders brief, Clayton's attorney suggested that the sentence was substantively

---

[10]     United States v. Booker, 543 U.S. 220 (2005).

unreasonable based on the de minimis amount of drugs involved, Clayton's acceptance of responsibility, his expression of remorse, and "the double penalty imposed against the defendant for the same insignificant conduct through a revocation of supervised release and sentencing on a new indictment." United States v. Clayton, No. 14–14279 (11th Cir.), ECF Entry of Dec. 29, 2014 ("Anders Brief") at 21. Here, Clayton similarly argues his sentence was substantively unreasonable based on the de minimis amount of drugs, his acceptance of responsibility, his expression of remorse, and an alleged "double penalty." Compare § 2255 Motion at 5-6 with Anders Brief at 21-22. However, the Eleventh Circuit rejected this claim when it found no arguable issues of merit after an independent examination of the record. Clayton, 598 F. App'x at 891. In other words, the Eleventh Circuit found no merit in the argument that the sentence was substantively unreasonable. Clayton has not pointed to any new facts or a subsequent change in the law since the direct appeal. As such, Clayton cannot establish that the sentence was substantively unreasonable, or that counsel was ineffective for not objecting to the sentence as substantively unreasonable. See Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012) (barring a change in the law, a § 2255 movant cannot relitigate an issue resolved against him on direct appeal) (citations omitted).

Regardless, the sentence was substantively reasonable under the circumstances, and an objection on this basis would have been unavailing. Clayton suggests that the Court did not give enough weight to certain factors, such as the de minimis amount of drugs involved, Clayton's remorse, and his acceptance of responsibility. See § 2255 Motion at 5. However, it is worth noting that acceptance of responsibility factored into the Guidelines calculation for the distribution offense. Clayton received a two-level reduction for

acceptance of responsibility under U.S.S.G. § 3E1.1(a), and the Court sentenced Clayton at the low end of the Guidelines range applicable to the distribution offense. Thus, acceptance of responsibility was taken into account in determining Clayton's Guidelines range and sentence.

Regarding the de minimis amount of drugs and Clayton's expression of remorse, the Court had the discretion to give these factors little weight, Clay, 483 F.3d at 743, especially given Clayton's criminal history. It is true that the amount of drugs involved in the instant offense was relatively small (consisting of 0.22 grams of cocaine base, 0.79 grams of powder cocaine, and 2.6 grams of marijuana). Sentencing & Revocation Tr. at 15-16. It is also true that Clayton expressed remorse during allocution (although he also deflected blame and attention onto others who were not before the Court). See id. at 30-37. But Clayton ignores that the instant offense was not his first federal drug trafficking conviction. Before committing the instant offense, Clayton had two prior convictions in federal court for distributing cocaine base and conspiring to distribute cocaine base. PSR at ¶¶ 33, 41, 42. Remarkably, Clayton learned nothing from those prior convictions. Equally remarkable is that Clayton committed the instant offense while still serving a term of supervised release for a previous federal drug conviction. See Sentencing & Revocation Tr. at 27-28; PSR at ¶ 44. As the government noted, Clayton began distributing cocaine base in 1995, and he had continuously been incarcerated or on supervised release since 1999. Sentencing & Revocation Tr. at 27.

In determining an appropriate sentence, the Court observed that neither the 57-month sentence for Clayton's first drug offense nor the nearly-100 month sentence for the second drug offense "did anything at all to deter future drug dealing or to protect the public

19

from future offenses by Mr. Clayton." Id. at 41. The Court further observed "there was no question … that Mr. Clayton is precisely what Congress was trying to address in applying the career or in enacting the career offender provisions." Id. at 41-42.

> Mr. Clayton has been to federal court twice. He received significant sentences and has not been deterred even slightly.
>
> And so the career offender guideline applies here. And it should. And the sentence that is – that is recommended by the career offender guideline in this case is absolutely necessary to reflect just punishment. It is necessary to try once again to deter Mr. Clayton from committing future offenses, and in the interim, to protect the public from future crimes.
>
> And so this is – this guidelines sentence is warranted here. It is hopefully going to be sufficient. It is certainly not greater than necessary in light of Mr. Clayton's past history.

Id. at 42. That the instant offense marked Clayton's third separate violation of the Controlled Substances Act entitled the Court to give less weight to his expression of remorse and the low drug quantity than to the career offender guideline.

Moreover, the 210-month sentence was 150 months below the 30-year (360-month) maximum sentence that the Court could have imposed for the distribution offense. That the sentence was significantly below the statutory maximum reinforces its reasonableness. Rosales-Bruno, 789 F.3d at 1256-57 (fact that the sentence was 33 months below the statutory maximum reflected the sentence's substantive reasonableness); Gonzalez, 550 F.3d at 1324 (fact that the sentence was 70 months below the statutory maximum reflected the sentence's substantive reasonableness). Similarly, Clayton's 24-month term of imprisonment for violating the terms of supervised release was within the Guidelines range, and 12 months below the maximum possible sentence, providing evidence of its reasonableness as well. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008).

Clayton suggests that the sentence was unreasonable because the Court imposed a "double penalty," by which he presumably refers to the consecutive nature of his sentences. Although the Court ordered the sentences for the distribution and revocation offenses to run consecutively, this was consistent with U.S.S.G. § 7B1.3(f).

> According to the sentencing guidelines, "[a]ny term of imprisonment imposed upon the revocation of ... supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of … supervised release." U.S.S.G. § 7B1.3(f) (policy statement). "Similarly, it is the Commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of … supervised release be run consecutively to any term of imprisonment imposed upon revocation." U.S.S.G. § 7B1.3(f), cmt. n.4.

United States v. Hernandez-Torres, 713 F. App'x 902, 904 (11th Cir. 2017). The Court ordered Clayton to serve a consecutive term of 24 months in prison on the revocation offense not only to reflect Clayton's criminal history in general, but also to reflect that this was not Clayton's first time violating the terms of supervised release. See Sentencing & Revocation Tr. at 38-39. As the Court noted, Clayton violated the conditions of supervised release in a previous criminal case and was sentenced to 24 months in prison, but that did not prevent Clayton from violating the conditions of his supervised release again. Id. at 38. Thus, ordering the instant 24-month sentence to be consecutive to the sentence for the distribution offense was reasonable to promote respect for the law and to deter Clayton from violating the conditions of supervised release in the future.

Accordingly, Clayton has not established that his overall sentence was substantively unreasonable. As a result, Clayton has also failed to demonstrate that counsel was ineffective under Strickland for not objecting to the sentence on that basis.

<u>Freeman v. Att'y Gen.</u>, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim."). Relief on Ground Two is therefore due to be denied.

## C. Clayton's Reply Brief

In his Reply, Clayton raises a new claim that the prosecutor engaged in misconduct before the grand jury by presenting the grand jury with false testimony. Reply at 1-2. Clayton is not entitled to relief on this claim for two reasons. First, a party cannot raise a new claim in a reply brief without first obtaining leave of the court to add the new claim. <u>Oliveiri v. United States</u>, 717 F. App'x 966, 967 (11th Cir. 2018); <u>Snyder v. United States</u>, 263 F. App'x 778, 779-80 (11th Cir. 2008). Because Clayton did not obtain leave of the Court to add the prosecutorial misconduct claim, the allegation is not properly before the Court. Second, the claim lacks merit. A defendant's plea of guilty, made knowingly, voluntarily, and with the assistance of competent counsel, waives all non-jurisdictional defects in the proceedings. <u>United States v. Pierre</u>, 120 F.3d 1153, 1155 (11th Cir. 1997) (citing <u>United States v. Yunis</u>, 723 F.2d 795, 796 (11th Cir. 1984)). Defects in the indictment or grand jury proceedings are non-jurisdictional. <u>See</u> <u>United States v. Boniface</u>, 631 F.2d 1228, 1229 (5th Cir. 1980) (allegation that the prosecutor clandestinely constructed the indictment after the grand jury voted on it was non-jurisdictional and waived by defendant's guilty plea)[11]; <u>Allen v. Campbell</u>, 456 F.2d 912, 912 (5th Cir. 1972) (claim regarding the racial composition of the grand jury was non-jurisdictional and waived by defendant's guilty plea). Clayton's (unfounded) allegation of prosecutorial misconduct is non-jurisdictional. Thus, Clayton waived this claim through his guilty plea, which the

---

[11]     Decisions handed down by the former Fifth Circuit Court of Appeals before the close of business on September 30, 1981, are binding in the Eleventh Circuit. <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1207 (11th Cir. 1981).

record shows he made knowingly, voluntarily, and with the assistance of competent counsel. As such, Clayton is not entitled to relief on the prosecutorial misconduct claim.

### III.    Certificate of Appealability

The undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Clayton "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby **ORDERED:**

1. Petitioner Arnold Clayton's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

2. The Clerk should enter judgment in favor of the United States and against Clayton, and close the file.

3. If Clayton appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 28th day of May, 2019.

MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:

Counsel of record
Pro se petitioner